# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT CHATTANOOGA

| | | |
|---|---|---|
| J.G., a Minor Student, By and Through His Parents, C.G. and J.E.G., and L.P., a Minor Student, By and Through His Parents, N.P. and D.P., | ) ) ) ) | Case No. 1:19-cv-63 |
| | ) | Judge Travis R. McDonough |
| *Plaintiffs*, | ) ) | Magistrate Judge Susan K. Lee |
| v. | ) ) | |
| KNOX COUNTY, | ) ) | |
| *Defendant*. | ) ) | |

## MEMORANDUM OPINION

Before the Court are Defendant Knox County's motion to dismiss for failure to exhaust administrative remedies or, alternatively, for failure to state a claim (Doc. 13); Plaintiffs' motion for leave to provide supplemental authority (Doc. 19); Plaintiffs' motion for preliminary injunction (Doc. 20); and Plaintiffs' motion for a protective order to quash or limit the deposition of Kimberly Kredich (Doc. 22). Plaintiffs' motion for leave to provide supplemental authority (Doc. 19) is unopposed and will be **GRANTED**. For the reasons that follow, Defendant's motion to dismiss (Doc. 13) will be **GRANTED**. Plaintiffs' motion for preliminary injunction (Doc. 20) and motion for a protective order (Doc. 22) will accordingly be **DENIED AS MOOT**.

## I.    BACKGROUND[1]

Plaintiffs J.G. and L.P. are autistic children who attend public elementary schools in

Knox County, Tennessee.  (Doc. 1, at 5.)  Each has an Individual Education Program ("IEP")

entitling him to special-education services under the Individuals with Disabilities Education Act

("IDEA"), 20 U.S.C. 1415(e)(2).  (*Id.*)  As of the filing of the complaint, J.G. was twelve years

old and in fifth grade at West Hills Elementary School.  (*Id.*)  L.P. was six years old and in

kindergarten at A.L. Lotts Elementary School.  (*Id.*)

Plaintiffs allege that Defendant Knox County has a "policy or practice" of

"predetermin[ing] that students with special needs who need service hours of two or less *will be*

removed from their regular education classrooms and sent to separate, special education

classrooms where students with complex or severe disabilities are being taught."  (*Id.* at 2

(emphasis in original).)  According to Plaintiffs, Defendants have announced this policy to the

Knox County Board of Education, the Tennessee Department of Education, and to Plaintiffs'

parents.  (*Id.* at 8.)  They allege that Defendant's enforcement of this "administrative" policy

denies full parental participation in IEP team meetings by removing these placement decisions

from the purview of the IEP team.  (*Id.* at 2.)  Plaintiffs allege that the special-education

classrooms are more restrictive environments than other available instructional options which the

IEP teams are legally obligated to consider.  (*Id.* at 3.)

Both Plaintiffs sought administrative remedies, but both were dismissed before an

administrative law judge had ruled.  (*Id.* at 8 n.2.)  Though Plaintiffs' complaint is somewhat

opaque on this point, it is clear that L.P. filed an administrative complaint with the Tennessee

---

[1] The facts alleged in the complaint (Doc. 1) are accepted as true for the purposes of ruling on Defendants' motion to dismiss.  *See Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008).

Department of Education and that J.G. filed a due process complaint, but both were dismissed when each Plaintiff "realized these same issues were occurring broadly." (*Id.*)

On February 27, 2018, Plaintiffs filed their complaint in this Court, asserting violations of the IDEA; its state counterpart, Tenn. Comp. R. & Reg. § 0520-01-09; Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794. (Doc. 1, at 6.) Plaintiffs seek injunctions that they assert would afford full parental and IEP Team participation in placement decisions and a free appropriate public education ("FAPE") for each child as required by the IDEA, as well as compensatory services or damages. (*Id.* at 23.) Plaintiffs allege in their complaint that, because their claims arise from Defendant's application of a "uniform, consistent, and publicized . . . established policy and practice" to Plaintiffs' IEP, administrative exhaustion would be futile.

Defendant's motion to dismiss (Doc. 13) is now ripe for review.

## II.     STANDARD OF LAW

Rule 8 of the Federal Rules of Civil Procedure requires a plaintiff's complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though the statement need not contain detailed factual allegations, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

A defendant may obtain dismissal of a claim that fails to satisfy Rule 8 by filing a motion pursuant to Rule 12(b)(6). A motion to dismiss for failure to exhaust administrative remedies is also considered pursuant to Rule 12(b)(6). *Sagan v. Sumner Cty. Bd. of Educ.*, 726 F. Supp. 2d 868, 872 (M.D. Tenn. 2010). On a Rule 12(b)(6) motion, the Court considers not whether the

plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. For purposes of this determination, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). This assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). This factual matter must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. ANALYSIS

Defendant seeks dismissal of all of Plaintiffs' claims, arguing that Plaintiffs have failed to exhaust administrative remedies and have failed to state a claim under Federal Rule of Civil

Procedure 12(b)(6).  (Doc. 13.)  Plaintiffs respond that exhaustion would be futile because they

seek systemic, rather than individual, relief.  (Doc. 17, at 3.)

The IDEA seeks to ensure access to a FAPE for students with disabilities.  20 U.S.C.

§ 1412(a)(1).  As part of a FAPE, students must be educated in the least restrictive environment,

which means that:

> (i) To the maximum extent appropriate, children with disabilities . . . are educated
> with children who are nondisabled; and (ii) Special classes, separate schooling, or
> other removal of children with disabilities from the regular educational
> environment occurs only if the nature or severity of the disability is such that
> education in regular classes with the use of supplementary aids and services
> cannot be achieved satisfactorily.

34 C.F.R. § 300.114(a)(2).

Under the IDEA, school systems that receive federal funding must develop and

implement an IEP for each eligible student.  20 U.S.C. § 1415(a).  School systems must allow

parents to meaningfully participate in the process of developing the IEP.  *Id.* § 1414(d)(1)(B).

An IEP contains a "statement of the child's present levels of academic achievement and

functional performance"; a "statement of measurable annual goals"; "a statement of the special

education and related services and supplementary aids and services, based on peer-reviewed

research to the extent practicable, to be provided to the child, or on behalf of the child"; and "a

statement of the program modifications or supports for school personnel that will be provided to

enable the child."  34 C.F.R. § 300.320(a)(1), (2), (4).

The IDEA requires state agencies that receive federal funding to maintain procedural

safeguards for children with disabilities and their parents.  20 U.S.C. § 1415(a).  These

safeguards include an opportunity "to present a complaint [to the state educational agency] . . .

with respect to any matter relating to the identification, evaluation, or educational placement of

the child, or the provision of a [FAPE] to such child[.]" *Id.* § 1415(b)(6)(A). Parents are further

entitled to a due process hearing on that complaint. *Id.* § 1415(b)(7)(B).

Parties must generally exhaust these administrative remedies before they can bring a

lawsuit in federal court seeking relief under the IDEA. *Id.* § 1415(l). Even if they bring their

claim pursuant to a statute other than the IDEA, their claim is subject to the exhaustion

requirement when they seek "relief that is also available under" the IDEA. *Id.*; *e.g.*, *S.E. v.*

*Grant Cty. Bd. of Educ.*, 544 F.3d 633, 641–42 (6th Cir. 2008) (Section 504 claim based on a

school's failure to implement a "504 plan" subject to IDEA exhaustion requirement).[2]

"Exhaustion 'enables the agency to develop a factual record, to apply its expertise to the

problem, to exercise its discretion, and to correct its own mistakes, and is credited with

promoting accuracy, efficiency, agency autonomy, and judicial economy.'" *Donoho ex rel.*

*Kemp v. Smith Cty. Bd. of Educ.*, 21 F. App'x 293, 296–97 (6th Cir. 2001) (quoting *Christopher*

*W. v. Portsmouth Sch. Comm.*, 877 F.2d 1089, 1094 (1st Cir. 1989)); *see also Crocker v. Tenn.*

*Secondary Sch. Athletic Ass'n*, 873 F.2d 933, 935–36 (6th Cir. 1989) (citing *Smith v. Robinson,*

468 U.S. 992, 1011–12 (1984)) (explaining the policy reasons underlying the administrative-

exhaustion requirement of the IDEA's predecessor statute).

Courts, however, have recognized several exceptions to the administrative-exhaustion

requirement. First, exhaustion is not required when claims seek redress for non-educational

injuries. *F.H. ex rel. Hall v. Memphis City Sch.*, 764 F.3d 638, 643–44 (6th Cir. 2014)

(exhaustion requirement did not apply to claims under 42 U.S.C. § 1983 seeking redress for

injuries resulting from alleged sexual abuse). Another exception to the administrative-

---

[2] Section 504 prohibits programs or activities receiving federal financial assistance from excluding individuals with disabilities from participation due to their disability. 29 U.S.C. § 794(a). In the context of public elementary and secondary education, Section 504, like the IDEA, provides for a FAPE. *See* 45 C.F.R. § 84.33.

exhaustion requirement is when there is a "need for swift action which administrative procedures cannot provide" even if the party promptly seeks administrative relief. *Crocker*, 873 F.2d at 936–37. "Nor is exhaustion required if the plaintiffs were not given full notice of their procedural rights under the IDEA." *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 917 (6th Cir. 2000). Finally, parties may "bypass the administrative process where exhaustion would be futile or inadequate." *Honig v. Doe*, 484 U.S. 305, 327 (1988). The party seeking to bypass the administrative procedures bears the burden of demonstrating futility. *Id.*

The United States Court of Appeals for the Sixth Circuit has construed the futility exception narrowly. For example, in *Covington*, the Sixth Circuit held that administrative exhaustion would be futile because "the administrative process would be incapable of imparting appropriate relief"; the student had already graduated and money damages were the only relief that would make him whole. 205 F.3d at 918. The futility exception applied in *Eva N. v. Brock*, 943 F.2d 51, 1991 WL 164324 (6th Cir. 1991) (unpublished table decision), because the state attorney general had already determined that the hearings officer "would be without authority" to grant the relief requested. *Id.* at *2. The Sixth Circuit has adhered to the rule that, "when a plaintiff has alleged injuries that could be addressed to any degree by the IDEA's procedures and remedies, exhaustion of those remedies is required." *S.E.*, 544 F.3d at 642.

The United States Supreme Court's holding in *Fry v. Napoleon County Schools*, 137 S. Ct. 743 (2017), supports this approach. In *Fry*, the Supreme Court held that when a plaintiff brings suit under a statute other than the IDEA, the plaintiff is required to exhaust IDEA's administrative procedures when the "gravamen" of the suit is the denial of a FAPE. *Id.* at 748. "If a lawsuit charges [the denial of a FAPE] . . . that plaintiff must first submit her case to an IDEA hearing officer, experienced in addressing exactly the issues she raises." *Id.* at 754. The

"substance, not surface" of the complaint is what maters—exhaustion is required "when the gravamen of a complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way." *Id.* at 755.  Although *Fry* addressed a situation in which the plaintiff sought relief under a different statute, the standard announced in *Fry* and the reasoning supporting it apply equally to cases in which plaintiffs, as here, seek relief under the IDEA in addition to other statutes.

In response to Defendant's motion to dismiss, Plaintiffs do not dispute that the gravamen of their complaint is the denial of a FAPE for the children.  But they assert that "systemic and policy-level operations—that is, decisions at an administrative level, not an IEP team level—are not subject to exhaustion."  (Doc. 17, at 8.)  The Sixth Circuit has not recognized a stand-alone "systemic" exception to the exhaustion requirement.  *F.C. v. Tenn. Dep't of Educ.*, 745 F. App'x 605, 609 (6th Cir. 2018) ("[W]e doubt that a plaintiff is exempt from the IDEA's exhaustion requirement just because he paints the allegations in his complaint as broadly applying to all students."); *W.R. v. Ohio Health Dep't*, 651 F. App'x 514, 521 (6th Cir. 2016) ("[The plaintiff's] claims of systemic violations . . . are subject to the IDEA's exhaustion requirement.").  Even so, at least one district court within the Sixth Circuit has treated "systemic" violations as sometimes indicative of futility.  *See, e.g.*, *L.L. By & Through B.L. v. Tenn. Dep't of Educ.*, No. 3:18-CV-00754, 2019 WL 653079, at *6 (M.D. Tenn. Feb. 15, 2019) ("[T]he futility exception would apply in any case where the systemic nature of the allegations, alone or in the context of additional facts, rendered seeking administrative relief futile or inadequate to protect the plaintiff's rights.").  But it is not enough to allege systemic violations.  Plaintiffs must still demonstrate futility.

Plaintiffs expend one sentence explaining why exhaustion would be futile: "[Administrative law judges] at due process provide individual remedies for loss of FAPE, or [least restrictive environment]; they cannot, however, fix practices or policies which will inevitably repeat themselves at every subsequent IEP meeting." (Doc. 17, at 3.) Assuming *arguendo* that IDEA administrative hearing officers indeed lack the authority to order schools to alter their procedures during an individual student's IEP meetings, Plaintiffs nonetheless concede that an IDEA hearing officer can provide at least some of the relief they seek, "individual remedies for loss of FAPE . . . ."[3] (*Id.*) And "when a plaintiff has alleged injuries that could be addressed to any degree by the IDEA's procedures and remedies, exhaustion of those remedies is required." *S.E.*, 544 F.3d at 642. Furthermore, if Plaintiffs fail to receive all the relief they seek, they may return to federal court with the benefit of agency expertise and a developed factual record, "promoting accuracy, efficiency, agency autonomy, and judicial economy" as Congress intended when it passed the IDEA. *Donoho*, 21 F. App'x at 296 (internal quotation marks omitted).

Because Plaintiffs have not met their burden of demonstrating that exhausting administrative remedies would be futile, the Court will **GRANT** Defendant's motion to dismiss Plaintiffs' claims for failure to exhaust administrative remedies.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for leave to provide supplemental authority (Doc. 19) is **GRANTED**; Defendant's motion to dismiss (Doc. 13) is **GRANTED**; Plaintiffs' claims against Defendant are hereby **DISMISSED WITHOUT PREJUDICE**; and Plaintiffs' motion for a preliminary injunction (Doc. 20) and motion for a protective order (Doc. 22) are

---

[3] To the extent Plaintiffs seek to "fix practices or policies" as applied to other students, they have not alleged class claims and have no standing to assert claims on behalf of others.

**DENIED AS MOOT**.

**AN APPROPRIATE JUDGMENT WILL ENTER.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**